IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOSEPH BEAN, #1141587 | § | |
| VS. | § | CIVIL ACTION NO. 6:08cv511 |
| LESLIE LUCAS, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF PARTIAL DISMISSAL

Plaintiff Joseph Bean, a prisoner previously confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

### Facts of the Case

The original complaint was filed on December 29, 2008. On June 25, 2009, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Officer Renee Lanphier, Warden Dewayne Dewberry, Nurse Tara Patton and Sgt. Mora testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

The Plaintiff testified that Defendant Officer Lucas subjected him to excessive use of force on June 24, 2008. He filed a grievance against Lucas. Defendant Lt. Karn investigated the matter. The Plaintiff asserted that Lt. Karn tried to talk him out of pursuing the matter. Nonetheless, the grievance was filed, and the Office of the Inspector General conducted an investigation into his claims. The response to his Step 2 grievance in #2008168224 revealed that the Office of the Inspector General decided that no case would be opened.

On October 7, 2008, Officer Ellis ordered the Plaintiff to come out of his cell and to go into the hallway. The Plaintiff stated that he saw Defendants Williams and Lucas in the hallway. He alleged that Williams and Lucas ordered Officer Ellis to remove him from his cell in retaliation for the previous grievance against Lucas. The Plaintiff became suspicious and refused to come out of his cell. Defendants Williams and Lucas filed disciplinary cases against him for masturbating in public. Defendant Sgt. White investigated the disciplinary cases and permitted them to proceed. The Plaintiff alleged that Sgt. White and Lt. Karn failed to supervise their subordinates properly, failed to discipline them and failed to protect him from retaliation.

The Plaintiff next complained about the disciplinary case conducted on October 16, 2008. The Plaintiff complained that Defendant Counsel Substitute Hawkins falsely informed the disciplinary hearing officer that he did not want to attend the hearing. Defendant Captain Mares found him guilty. The records submitted at the *Spears* hearing reveal that the disciplinary case filed by Defendant Lucas was Case Number 20090043864. The Disciplinary Report and Hearing Record confirmed that Defendant Hawkins was the counsel substitute and that she reported that the Plaintiff did not want to attend the hearing. The Plaintiff was found guilty based on Defendant Lucas' written report. The punishment consisted of the loss of 30 days recreation and commissary privileges, 15

days cell restrictions, reduction in classification from L1 to L2 and the loss of 30 days good time. The disciplinary case filed by Officer Williams was Case Number 20090038745. The Disciplinary Report and Hearing Record shows that this incident allegedly occurred thirty minutes before the other case. Lt. Woodward, who is not a defendant in this case, was the disciplinary hearing officer. The hearing was conducted on October 19, 2008. The Plaintiff was found guilty, and his punishment consisted of the loss of recreation and commissary privileges for 15 days.

The response to Grievance Number 2009026172 reveals that Defendant Williams stated that she did not know what the Plaintiff was referring to in accusing her of retaliation. Defendant Lucas responded by stating that the Plaintiff had engaged in sexual misconduct. She denied that she used profanity or engaged in abusive language. Warden Wisener concluded that there was no evidence to support a claim of retaliation.

The Plaintiff complained that Defendants Mares and Thompson found him guilty and placed him in administrative segregation. It is noted that at other times he stated he was confined in solitary confinement for 45 days. Warden Dewberry testified under oath the Plaintiff had two consecutive terms of solitary confinement and that he was actually housed in the building where prehearing detention and solitary confinement are located.

The Plaintiff testified that he went to the law library on December 5, 2008. Defendant Officer Green stated during the law library session that all offenders must keep both hands on the table or they will be forced to leave the session. A few minutes later a guard removed him from the law library. The Plaintiff alleged that his removal denied him access to court. He was escorted to the Major's office. Defendants Christopher, Gibson, Garza and Walker were there. He was subsequently ordered out of the office. Lt. Christopher then punched him against the back of his

head and pushed him against a file cabinet. Restraints were placed on him. The Plaintiff testified that he received disciplinary cases for masturbation and refusing to obey an order. Disciplinary Case Number 20090091355 reveals that Officer Green charged him with sexual misconduct. The Plaintiff asserted in defense that he was just sitting there. Nonetheless, he was found guilty. His punishment included the loss of commissary privileges for 30 days, cell restrictions for 30 days and the loss of 60 days good time.

On December 9, 2008, the Plaintiff returned to the law library with a large writ envelope, a § 1983 lawsuit form and postage. Defendant Mancera told him that she did not have time to print out an account statement and he should come back on the following day. Moments later, Defendants Mancera, Young and Vasquez came to his cell. Mancera made him strip search. He was placed in prehearing detention. Officer Hebert filed a disciplinary case against him for being out of place and causing a disruption. The Plaintiff claimed that Officer Hebert filed the disciplinary case against him in retaliation for being out of place and causing a disruption. He testified that he had simply returned to his cell block, but he was told that he had to be escorted to his cell block. The records in Disciplinary Case Number 20090094457 reveal that the Plaintiff was charged with being in a washroom when he had no authorization to be there. A hearing was conducted on December 11, 2008. The punishment imposed at the disciplinary hearing consisted of the loss of commissary privileges for 30 days, cell restrictions for 30 days and the loss of 30 days good time. His property was sent to the wrong cell. Only part of the property was retrieved. The disciplinary case investigation worksheet noted that the Plaintiff specified that he needed stamps and papers to file his lawsuit. It is noted that the complaint in this case was signed on December 19, 2008, and filed on December 29, 2008. The *in forma pauperis* data sheet was dated December 22, 2008.

Discussion and Analysis

The first issue the Court will take up concerns the Plaintiff's excessive use of force claims. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

The Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). Even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d at 924.

The Fifth Circuit has issued a number of decisions which provide guidance in determining whether an inmate's physical injuries were *de minimis*. In *Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997), the Fifth Circuit held that a sore, bruised ear lasting for three days that resulted from an officer twisting the inmate's ear was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit. In *Gomez v. Chandler*, 163 F.3d at 924-25, the Fifth Circuit held that injuries consisting of "cuts, scrapes, contusions to the face, head and body" that resulted from an inmate being knocked down, punched and kicked and that required medical treatment were more than *de minimis*.

In the present case, the Plaintiff has alleged facts against Officer Lucas that support an inference that she maliciously used force against him on June 24, 2008. The issue of whether he sustained more than a *de minimis* injury was not fully developed during the *Spears* hearing. At this juncture, however, the Court will give him a benefit of a doubt and permit him to proceed with his excessive use of force claim against her.

The Plaintiff also complained that Lt. Christopher punched him on the back of the head and pushed him into a file cabinet on December 5, 2008. The Plaintiff has clearly alleged facts showing

6

that force was used, but he did show that he sustained any injuries. His factual allegations did not satisfy the more than a *de minimis* injury threshold, thus he should not be allowed to proceed with the excessive use of force claim. It is also noted that the Plaintiff stated that he sued Defendants Gibson, Garza and Walker because they were present. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Mere presence is not enough. Thus the excessive use of force claim against Defendants Gibson, Garza and Walker should be dismissed for the additional reason that they did not participate in the incident. The excessive use of force claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also made several retaliation claims. The concept of retaliation in the context of § 1983 lawsuits is very limited. To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed

7

a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Finally, the retaliatory adverse act must be more than a *de minimis* act. *Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 596 (2006). In *Morris*, for example, the Fifth Circuit held that a job transfer from the commissary to the kitchen was *de minimis*, while a transfer to a more dangerous unit was a sufficiently adverse retaliatory act. *Id.* at 687.

The Plaintiff alleged that the disciplinary cases he received regarding incidents that occurred on October 7, 2008, were filed in response to his prior grievance against Defendant Lucas. In *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990), the Eighth Circuit made the following observations about challenges to prison disciplinary cases couched in terms of a disciplinary case:

> While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from the discipline imparted for acts that a prisoner was not entitled to perform. Any other rule would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under section 1983 arguing that prison officials disciplined him in retaliation for his filing a grievance.

The Plaintiff has not shown that either Defendant Lucas or Defendant Williams filed the disciplinary

8

cases against him as an act of retaliation. His retaliation claims against them are conclusory. The retaliation claims against Defendants Lucas and Williams fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also alleged that Defendant Hebert filed a disciplinary case against him in retaliation for him being out of place and causing a disruption. The Plaintiff being out of place and causing a disruption are not constitutionally protected activities. The Plaintiff has not satisfied the first prong in a retaliation case. The retaliation claim against Defendant Hebert fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also alleged that Lt. Karn and Sgt. White failed to protect him from retaliation. It is again noted that in order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d at 793. Neither individual participated in the alleged acts of misconduct. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The claims against Lt. Karn and Sgt. White should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also directly complained about the disciplinary cases. However, he cannot assert his due process claim in a 42 U.S.C. § 1983 action unless he first shows that the results of the disciplinary cases were reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Plaintiff must ordinarily challenge disciplinary cases in habeas corpus proceedings, as opposed to § 1983 proceedings. The Plaintiff's civil rights claims about the disciplinary cases fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact, thus they should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). He may, however, challenge such disciplinary cases in habeas corpus proceedings if he desires to do so.

The claim against Counsel Substitute Hawkins should be dismissed for an additional reason. Attorneys representing defendants ordinarily may not be sued in a § 1983 lawsuit because their actions were not under color of state law. *See Briscoe v. LaHue*, 460 U.S. 325, 329 n.6 (1983); *Polk County v. Dodson*, 454 U.S. 312 (1981); *Slavin v. Curry*, 574 F.2d 1256, 1265 (5th Cir. 1983). A counsel substitute in a prison disciplinary proceeding has the same purpose as a defense attorney in a criminal case and thus ordinarily cannot be sued in a civil rights lawsuit. *Banuelos v. McFarland*, 41 F.3d 232 (5th Cir. 1995). The claims against Hawkins fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against her should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also alleged that he was denied access to court. He alleged that he was denied access to court when he was removed from the law library on December 5, 2008, and when he was denied an *in forma pauperis* data sheet on December 9, 2008. Prisoners are entitled to "a reasonably

10

adequate opportunity to present claimed violations of fundamental rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Prison officials may not abridge or impair an inmate's right of access to court. *See Ex parte Hull*, 312 U.S. 546, 549 (1941); *Johnson v. Avery*, 393 U.S. 483, 486 (1969). "While the precise contours of a prisoner's right of access to court remain obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). The Supreme Court has held that the right of meaningful access to court imposes a duty on prison officials to provide indigent inmates with either an adequate law library or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. at 828. The Texas prison system provides both attorneys and law libraries. The parameters of the prison system's access to court plan has been defined in conjunction with the *Ruiz* litigation.

On the other hand, an inmate's right of access to court is not absolute. The Supreme Court has noted some of the limits on the right of access to court:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of thier confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendant's actions. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. at 351. In *Lewis v. Casey*, the Supreme Court stated that an inmate must show more than the inability to file a claim in order to

succeed on an access to court claim; instead, he must show that he would have been able to bring a nonfrivolous claim with arguable legal merit -- he must show an actual injury. 518 U.S. at 351-53. There is no constitutional violation when a prisoner has time to reprepare and file his legal document in a court despite impediments caused by officials. *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988).

In the present case, the Plaintiff has not shown harm because he was removed from the law library. He also failed to show harm because he was not given an *in forma pauperis* data sheet on December 9, 2008. Indeed, he obtained an *in forma pauperis* data sheet, dated December 22, 2008, and was able to file this lawsuit on December 29, 2008. He also failed to show harm because some of his property was lost. Once again, he was able to file this lawsuit despite the problems he encountered. The denial of access to court claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also claimed that he was the victim of harassment and verbal abuse. Verbal harassment, without more, cannot amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). In *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002), the Fifth Circuit held that verbal abuse and requiring an inmate to beg for food did not provide a basis for an actionable claim under § 1983. The Fifth Circuit made the following statement about officials threatening a plaintiff:

> [I]n the Eighth Amendment context, our circuit has recognized as a general rule that "mere threatening language and gestures of a custodial officer[r] do not, even if true, amount to constitutional violations". *McFadden*, 713 F.2d at 146 (quoting *Coyle v. Hughs*, 436 F. Supp. 591, 593 (W.D. Okla. 1977); *accord Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.) (the use of words, no matter how violent, does not comprise a § 1983 violation), *cert.*

*denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation under § 1983).

*Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995). The harassment and verbal abuse claims are frivolous.

The Plaintiff also complained that his property was sent to the wrong cell after the incident on December 9, 2008. A state actor's negligent or intentional deprivation of a plaintiff's property does not result in a violation of procedural due process rights if there exists an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional conduct); *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981) (negligent conduct); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). The Texas court system provides an adequate postdeprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir 1986). Moreover, the Texas state administrative and judicial systems provide an adequate state post-deprivation remedy for property taken from prisoners. *See* Tex. Gov. Code § 501.007. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied*, 464 U.S. 897 (1983); *Loftin v. Thomas*, 681 F.2d 364, 365 (5th Cir. 1982). Because Texas has adequate post-deprivation remedies, a prisoner does not have a basis for a § 1983 claim for the confiscation of his property. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). The property claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law in fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also alleged there was a conspiracy against him, particularly involving Officer Lucas. To prove a conspiracy, plaintiff must prove an actual deprivation of a constitutional right. *Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th

Cir. 1984). *See also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). Mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under 28 U.S.C. § 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (*en banc*). In the present case, the Plaintiff has not alleged facts supporting an inference that there was a conspiracy that resulted in the violation of his rights under § 1983. The conspiracy claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law in fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the Plaintiff may proceed with his excessive use of force claim against Officer Leslie Lucas. It is further

**ORDERED** that the Plaintiff's remaining civil rights claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is finally

**ORDERED** that the Plaintiff is free to file petitions for a writ of habeas corpus with respect to any prison disciplinary case discussed by him in this lawsuit.

So **ORDERED** and **SIGNED** this **30** day of **June, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE